IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTORIA FRICKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 18-126 |
| | ) |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

O R D E R

AND NOW, this 28th day of March, 2019, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 12), filed in the above-captioned matter on June 22, 2018,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 10), filed in the above-captioned matter on May 24, 2018,

IT IS HEREBY ORDERED that said Motion is GRANTED.  Accordingly, this matter is hereby remanded to the Commissioner of Social Security ("Commissioner") for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.     Background**

On August 27, 2014, Plaintiff Victoria Fricke protectively filed a claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and a claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq.  Specifically, Plaintiff claimed that she became disabled on January 1, 2013, due to fibromyalgia, agoraphobia, mood disorder, depression and anxiety.  (R. 173).

1

After being denied initially on January 7, 2015, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on January 31, 2017. (R. 29-49). In a decision dated March 21, 2017, the ALJ denied Plaintiff's request for benefits. (R. 15-23). The Appeals Council declined to review the ALJ's decision on December 18, 2017. (R. 1-5). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II.     Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence—

particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'" Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522, 416.922. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20

C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. §§ 404.1523, 416.923.

### III. The ALJ's Decision

In the present case, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since January 1, 2013. (R. 17). The ALJ also found that Plaintiff met the second requirement of the process insofar as she had certain severe impairments, specifically, fibromyalgia, obesity, an adjustment disorder, and personality disorder. (R. 17). The ALJ further concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 18).

The ALJ next found that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that she was limited to tasks of a simple nature that would not require dealing with the general public, working as a member of a team, meeting the demands of a rapid production rate pace or similar sources of high levels of work-related stress. (R. 20).

At Step Four, the ALJ found that Plaintiff had no past relevant work, and he moved on to Step Five. (R. 21). The ALJ then used a vocational expert ("VE") to determine whether or not a significant number of jobs existed in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, such as addresser, toy stuffer, and surveillance system monitor. (R. 22). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 23, 47).

## IV. Legal Analysis

Plaintiff raises several arguments as to why she believes that the ALJ erred in finding her to be not disabled. While the Court does not fully agree with the arguments set forth by Plaintiff, it does agree that remand is warranted in this case. Specifically, because the Court finds that the ALJ did not properly address certain evidence of record relevant to Plaintiff's allegations regarding her mental impairments, the Court cannot find that Plaintiff's RFC is supported by substantial evidence. Accordingly, the Court will remand the case for further consideration.

RFC is defined as "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Fargnoli, 247 F.3d at 40 (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)); see also 20 C.F.R. §§ 404.1545(a), 416.945(a). Not only must an ALJ consider all relevant evidence in determining an individual's

RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

Among Plaintiff's complaints here is that she experienced various symptoms, and had certain corresponding limitations, due to her mental impairments. In his decision, however, the ALJ determined that Plaintiff's symptoms were not as severe as she contended, and thus that she did not have the degree of limitations alleged. Although the ALJ found that Plaintiff had certain severe mental impairments, including an adjustment disorder and personality disorder, he concluded that her medical records revealed a broader functional profile than Plaintiff otherwise alleged. (R. 17-21). In explaining how he reached this conclusion, however, the Court finds that the ALJ did not provide an altogether accurate summary of Plaintiff's treatment records.

First, the ALJ appears to have mistakenly combined Plaintiff's hospital visits from May 2013 and May 2014, thereby perhaps overlooking the relevance of certain records as they relate to her mental issues. In summarizing Plaintiff's medical treatment, the ALJ first noted that Plaintiff was admitted to UPMC McKeesport hospital in May 2013 with symptoms of a severe cough, and that she was diagnosed as having acute bronchitis. (R. 17). A few paragraphs further into his discussion, the ALJ states that Plaintiff had not worked since May 2013, "when she had

6

gone to the hospital thinking she had a heart attack that turned out to be acute bronchitis." (R. 18).

Upon careful review of the record, however, the Court notes that Plaintiff's hospital visit due to bronchitis appears to have occurred on May 12, 2014, and that it appears to have had no connection to any alleged mental issues, while other hospital visits that the ALJ failed to discuss did appear to implicate such concerns. (R. 257-63). For example, according to the record, Plaintiff was admitted to UPMC McKeesport on May 9, 2013, complaining of chest pain. (R. 270). The hospital treatment notes from that stay indicate that Plaintiff was anxious and was given Ativan, and that her symptoms could have been a result of an anxiety attack that she had experienced early that morning—not as a result of bronchitis, as the ALJ indicates in his analysis. (R. 270). Plaintiff was discharged the following day, May 10, 2013, which was also the same day that Plaintiff took a treadmill exercise test (which the ALJ appears to have mistakenly noted in connection with Plaintiff's 2014 bronchitis episode). (R. 252-53).

The Court further notes that the treatment record from Plaintiff's May 2013 hospital visit also states that she had been seen and evaluated at the Emergency Department two months earlier for complaints of chest pain, and that admission was recommended for further treatment at that time, but that Plaintiff had refused and had signed herself out "AGAINST MEDICAL ADVICE. Patient states she suffers from anxiety and panic attacks which is the reason why she did not stay." (R. 273). The record confirms that Plaintiff was seen in the ED on March 9, 2013 for chest pain and that the hospital recommended that she stay, but that she refused. (R. 328-30).

Thus, because it appears that the ALJ confused and combined several of Plaintiff's treatment records from her visits to UPMC McKeesport—noting only that a hospital visit was related to acute bronchitis while making no mention of symptoms of anxiety or panic attacks—it

7

is not clear whether the ALJ considered the potential relevance of these records with regard to Plaintiff's mental impairments and her attempts to seek out treatment. While the ALJ was not required to credit such records with any special significance, the fact that those records were mistakenly mischaracterized in the ALJ's discussion indicates that they may not have been fully considered in his analysis of Plaintiff's mental health treatment.

Second, the ALJ states that, after Plaintiff's consultative psychological examination on December 16, 2014, Plaintiff "was not involved in any further mental health treatment until October 20, 2016 when she presented at Mon Yough Community Services for psychiatric evaluation as her disability hearing was forthcoming." (R. 18). Upon review of the record, however, the Court notes that Plaintiff actually presented at Mon Yough Community Services on January 28, 2016 for an initial clinical assessment, and that she then appears to have had mostly monthly visits from April through December of that year. (R. 421-66). Further, the record indicates that from May through November 2015, during her treatment with McKeesport Internal Medicine PCP, Plaintiff reported buying Klonopin off the street to keep her mood stable, having appointments to see a therapist and psychiatrist, and ultimately following up with a therapist and psychiatrist and being prescribed Klonopin. (R. 515, 523, 531, 538). Thus, according to the record, Plaintiff did not simply appear for psychiatric evaluation in October 2016, right before her disability hearing, and after having had no interim mental health treatment, as the ALJ states. (R. 18). Rather, Plaintiff appears to have sought and received treatment from various health care providers during that time.

Nevertheless, in finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her alleged symptoms were "not entirely consistent with the medical evidence and other evidence in the record," the ALJ explicitly relied in part on his understanding

8

that Plaintiff had largely failed to seek mental health treatment. (R. 21). Among other things, the ALJ clearly explained that Plaintiff "has not been experiencing such a degree of emotional distress as to motivate her to consistently seek mental health treatment." (R. 21). By way of further explanation, the ALJ explained that Plaintiff "resumed treatment at Mon Yough only as the time for her hearing upon the disability application was approaching." (R. 21). Yet, as the Court notes, the ALJ appears to have overlooked significant parts of Plaintiff's mental health complaints and treatment which are relevant to the ALJ's determination. While the ALJ is not required to discuss every piece of evidence in the record, the Court finds that, in this instance, the portions of the record that the ALJ failed to address—along with certain records that he appears to have mistakenly mischaracterized—are simply too significant to allow the Court to discern whether the ALJ's decision is supported by substantial evidence. See Fargnoli v. Massanari, 247, F.3d 34, 42 (3d Cir. 2001).

Accordingly, the Court finds that the ALJ's discussion and evaluation of the evidence regarding Plaintiff's alleged symptoms of, and treatment for, her mental impairments, which is relevant to the ALJ's finding of limitations, is insufficient in this case. The Court also finds that the ALJ's flawed explanation calls into question the appropriateness of his RFC finding, and that the RFC is therefore not supported by substantial evidence. While the ALJ is certainly permitted to find the limitations caused by Plaintiff's mental impairments to be less severe than alleged, the Court finds that the ALJ's justification for his conclusion is simply insufficient here. Thus, remand is required to allow for further discussion as to the ALJ's evaluation of the evidence in this regard as well as his ultimate formulation of Plaintiff's RFC.

Furthermore, although the Court takes no position as to Plaintiff's remaining issues, the ALJ should, of course, ensure that proper weight be accorded to the various opinion and medical

evidence presented in the record.  If the Court finds that additional evidence is required, he should supplement the record as needed.  Additionally, the ALJ should verify that his conclusions concerning Plaintiff's RFC—as well as his findings regarding the credibility of all of Plaintiff's symptoms—are fully explained, in order to eliminate the need for any future remand.

**V.     Conclusion**

In short, because the ALJ failed to address properly the relevant evidence of record concerning the alleged symptoms and limitations caused by Plaintiff's mental impairments, the Court finds that substantial evidence does not support the ALJ's RFC determination, and his ultimate decision, in this case.  The Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

s/ Alan N. Bloch<br>
United States District Judge

ecf:        Counsel of record